## Hunt et al. v. Kane et al.

640

*Mulvihill & Herron,* for plaintiffs.

*Charles Alvin Jones,* county solicitor, for defendants.

*H. Stanley Douglass,* borough solicitor, for Borough of Elizabeth.

DITHRICH, J., October 30, 1936.—This is a rule granted on the County Commissioners for Allegheny County to show cause why they should not be enjoined and restrained from distributing to and submitting to the electors of the Borough of Elizabeth the special ballot containing a form for a referendum under the provisions of section 502 of the Act of July 18, 1935, P. L. 1246, known and cited as the "Pennsylvania Liquor Control Act."

Section 502 of the act provides, in part, as follows:

"Whenever electors equal to at least ten per centum of the highest vote cast for any office in the municipality or township at the last preceding general election shall petition the corporate authorities of the municipality or township for a referendum on the question of granting . . . liquor licenses, the respective corporate authorities shall cause a question to be submitted at the general or municipal election occurring at least sixty days thereafter, by certifying a resolution, duly adopted, to the county commissioners for submission of such question, on the ballot or on voting machines, at such election in the manner provided by the election laws of the Commonwealth."

The only question involved in this proceeding is whether a sufficient number of electors have signed the petition, and the question turns on what is meant by "ten per centum of the highest vote cast for any office in the municipality . . . at the last preceding general election".

At the general election held November 6, 1934, the total vote cast by electors of the Borough of Elizabeth for the office of representative in Congress was 1063. The petition presented to the borough council contained the signatures of 100 electors. The vote for representative in Con-

gress was the highest vote cast for any office by the electors in the borough. If the act is interpreted to mean what it apparently says, that the requisite number of petitioners shall be equal to at least 10 percent of the highest vote cast for any office, then the petition in this case is insufficient. If, however, the act is interpreted to mean at least 10 percent of the highest vote cast for any *candidate* for office, then the petition is sufficient.

There is no appellate court decision on the question, and in two lower courts where the question has been raised the courts have not agreed. The Court of Common Pleas of York County has decided that the word "office" refers to the person by whom the duties of the office are to be performed, and the Court of Common Pleas of Venango County has concluded that the "highest vote cast for any office" means the highest aggregate vote for all candidates for any office and not the highest vote for any individual candidate for office. We agree with the latter decision.

It was clearly the intent of the legislature to require 10 percent of the representative vote of a municipality or township to petition the authorities before they would be required to submit the question to the entire electorate. The most practical way of ascertaining the representative vote would be to take the combined vote of the candidates for the office for which the "highest number of votes was cast." Ten percent of the highest vote cast for any candidate would certainly not be a representative vote. As a general rule there are many candidates for any office to be filled, and it frequently happens that the highest vote cast for any candidate will be a minority of the votes cast for the office.

"Office" is defined by Blackstone (2 Blackstone's Commentaries, page 36) to be the ". . . right to exercise a public or private employment, and to take the fees and emoluments thereunto belonging . . . whether public, as those of magistrates; or private, as of bailiffs, receivers", and that is the popular meaning of the word.

"To contend that the word 'office' as used in section 502 was intended by the legislature to mean 'candidate' would in our opinion require giving the word a strained meaning and one which in ordinary usage would never be given. We know of no rule of law, and we have been unable to find any, although diligent search has been made, which gives to the term 'office' a technical meaning, and certainly there is nothing in the context of the statute under consideration which would lead one to conclude that this word was intended to have any meaning other than that which is usually assigned to it." Murray et al. v. County Commissioners, Court of Common Pleas of Venango County, No. 3, November term, 1936, sitting in equity, not yet reported.

We are of opinion that the petition has not been signed by "electors equal to at least ten per centum of the highest vote cast for any office in the municipality . . . at the last preceding general election", and that it is therefore insufficient according to law.

However, although the resolution of council was adopted on August 7, 1936, and was certified to the county commissioners on or before August 24th, the petition now before us was not presented until October 28th, and the ballots for the referendum have been printed. It is fortunate for petitioners that a separate ballot has been prepared for the referendum, for if our ruling would require a reprinting of the general ballots we probably would have discharged the rule, as all the facts were previously known to petitioners and they should have acted promptly. Justice requires that they should pay for the cost of printing the separate ballots. The rule to show cause will be made absolute with that condition.

### Order of court

And now, to wit, October 30, 1936, the rule to show cause why John J. Kane, George Rankin, Jr., and John S. Herron, County Commissioners for Allegheny County, Pa., should not be enjoined and restrained from distribut-

ing to and submitting to the electors of the Borough of Elizabeth the special ballot containing a form for a referendum under the provisions of the Pennsylvania Liquor Control Act, supra, for the election to be held on Tuesday, November 3, 1936, is made absolute; provided Thomas Hunt and Victor Trafelas, petitioners, pay, or enter security for the payment of, the cost of printing the special ballots.